**IN THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **STEVE BERG,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 03-489C** |
| **v.** | ) | |
| | ) | **(Judge Sypolt)** |
| **THE UNITED STATES,** | ) | |
| **Defendant,** | ) | |

**PLAINTIFF'S RESPONSE TO MOTION TO DISMISS**

Now comes the Plaintiff, STEVE BERG, by his attorney, THOMAS PETERS, and in response to the Government's Motion to Dismiss states as follows:

**QUESTIONS PRESENTED**

1. Whether the Court has jurisdiction to enforce a contract that was made by an agent of the Government with express statutory authority.

2. Whether the Court has jurisdiction over a claim that alleges Government agents confiscated Plaintiff's property and then disposed of it, without compensating him for the property and without prior judicial approval.

**STATEMENT OF FACTS**

Government agents confiscated Plaintiff's personal property and later gave that property to charitable organizations. (Comp. ¶9-24). The property that was given away was not contraband and was not the subject of any forfeiture proceeding. Id. Nor was

the property the subject of Plaintiff's plea agreement with the Government. Id.

**STANDARD OF REVIEW**

The Court must accept as true all the allegations in the Complaint and may dismiss for want of jurisdiction, only if those allegations fail to invoke a claim for breach of contract or for a violation of the Takings Clause. Bailey v. United States, 54 Fed.Cl.459 (2002).

**ARGUMENT**

**THE COURT HAS JURISDICTION OVER PLAINTIFF'S BREACH OF CONTRACT CLAIM.**

The Tucker Act (28 U.S.C. 1491) confers jurisdiction on this Honorable Court for all claims "against the United States founded either upon the Constitution ... or upon any express or implied contract with the United States... ." 28 U.S.C. 1491. Jurisdiction, once conferred, covers all claims "for liquidated or unliquidated damages," except those claims "sounding in tort." Id. Plaintiff's complaint alleges alternative theories of liability, both of which are expressly covered by the plain language of the Tucker Act.

The first theory is based on breach of an "express or implied contract." 28 U.S.C. 1491. Plaintiff asserts that he had a contract with the Government and the Government breached its end of the agreement by disposing of Plaintiff's lawfully obtained merchandise. (Comp. at 9-24). Plaintiff alleges in the

alternative, that the Government took property that was not subject to forfeiture and disposed of it without providing just compensation.

It is beyond dispute that, "The Tucker Act grants the United States Court of Federal Claims jurisdiction to entertain claims alleging that the government has taken private property for public use in violation of the Fifth Amendment to the United States Constitution." Marcalan v. United States, 52 Fed.Cl.736, 742 (2002); see also, Preseault v. ICC, 499 U.S. 1, 12, 108 L.Ed.2d 1 (1990); United States v. Cawsby, 328 U.S. 256, 267, 90 L.Ed. 1206 (1946). Since "this Court must accept as true all allegations of fact contained in the complaint and draw all reasonable inferences in favor of a plaintiff," the theories of liability alleged in the Complaint, taken as true, clearly fall within the jurisdictional purview of the Tucker Act.

The Government, however, claims that all plea agreement disputes are exempt from the jurisdiction otherwise conferred by the Tucker Act. (Gov't Mo. Dismiss, at 3-5). That is an odd position to take, given the plain language of the Tucker Act. On its face, the Tucker Act only excludes tort claims. 28 U.S.C. 1491. The Act makes no apparent exemption for contract or constitutional claims that are in some way connected to a criminal plea agreement. Nor is there anything in the legislative history of the Tucker Act that excludes such claims

from the plain language of the Act. Damages are the remedy for a breach of contract (United States v. Winstar Corp., 518 U.S. 389 135 L.Ed.2d 964 (1996)) and "there is a presumption ... that a damages remedy will be available" for the breach of a contract. Sanders v. United States, 252 F.3d 1329, 1334 (Fed.Cir. 2001). Nonetheless, the Government claims that prior decisions relating to plea agreements bar claims like Plaintiff's.

In Kania v. United States, 227 Ct. Cl. 458, 650 F.2d 264 (1981), one of the cases cited by the Government, the plaintiff filed a claim for attorney's fees and expenses. Express statutory authorization is needed to recover these fees and expenses. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S.240, 265-68, 44 L.Ed.2d 141 (1975); Kurz & Root Co. v. United States, 652 F.2d 69 (1981). So the Court's decision denying the plaintiff's claim in Kania is, in that respect, inapposite as applied to Plaintiff Berg's claim. He is not seeking attorney's fees or expenses related to his criminal case.

Nor does the holding in Kania apply to Plaintiff Berg's claim that the Government unilaterally disposed of his property. The plaintiff in Kania had an agreement with the Government that, in effect, provided him with transactional immunity. When the Government breached that agreement, he enforced it by filing a motion to dismiss the indictment. His motion was granted so his contract with the Government was enforced. Kania, however, was

not satisfied with merely enforcing his contract; he wanted to collect his attorney's fees and expenses. By implication, he claimed his immunity agreement included a provision that entitled him to fees and costs, if the Government breached.

Assistant United States Attorneys, however, are not authorized by statute to bind the Government to an agreement for the recovery of such fees and expenses. In fact, the rule governing such claims requires an express statutory authorization. Alyeska Pipeline, 421 U.S. at 265-68. Therefore, the Kania court held, any claim for attorney's fees and expenses must be based on express authorization. The prosecutors did not have the requisite authorization so Kania did not have a viable claim.

Kania does not stand for the proposition that all contract agreements arising from a criminal proceeding are unenforceable "unless that agreement clearly and unmistakably subjects the government to monetary liability for any breach." (Def. Mot. at 5). See Bailey v. United States, 54 Fed. Cl. 459 (2002). In Bailey, for example, the plaintiff was entitled to fees and expenses but not to the appreciation of certain stock funds that he held as part of a plea agreement with the Government. There, the Court held that litigants are entitled to their day in Court "unless there is a ... persuasive basis" to deny them a hearing, on the merits. Bailey, 54 Fed. Cl. at 480. Furthermore, under

the Tucker Act, a plaintiff is only required to plead the existence of a contract to invoke this Honorable Court's jurisdiction. Id. Federal prosecutors are agents of the government and the authority to bind the government is implied "when such authority is an integral part of the duties assigned to" the prosecution. Bailey, 54 Fed.Cl. at 504 quoting H. Landeu & Co. v. United States, 886 F.2d at 322, 324 (Fed. Cir. 1989). Federal prosecutors are authorized to identify property that is, or is not, subject to forfeiture. Thus, a prosecutor's authority to bind the government to a forfeiture decision is indisputable.

The same is true for Defendant's mistaken reliance on Sanders v. United States, 252 F.3d 1329 (Fed. Cir. 2001). There, the plaintiff filed a damage claim for an alleged breach of his bail agreement. As in Kania, the plaintiff ultimately secured enforcement of the bail agreement through the District Court in the criminal proceeding. Like Kania, the plaintiff in Sanders claimed he was entitled to specific enforcement of the agreement plus additional monetary relief. The only meaningful difference between Kania and Sanders is that the additional relief in Sanders was damages for time spent in custody rather than "damages" disguised as a request for attorney's fees. The Sanders court noted that federal prosecutors are authorized to enter into plea and bail agreements, and those agreements are specifically enforceable. Sanders, 252 F.3d at 1334. The court,

however, drew a distinction between agreements that are part civil and part criminal and those that are "entirely concerned with the conduct of parties in a criminal case." Id. Relying on Kania, the Sanders Court held that where the contract in question is entirely governed by the conduct of parties in the criminal case, the specific authority of the prosecutor to make the agreement obligating the United States to pay must be clearly and unmistakably expressed. Sanders, 252 F.3d at 1335. Since prosecutors are not ordinarily in the business of authorizing damages for a breach of a bail agreement, the right to damages in Sanders was not express and, therefore, Tucker Act jurisdiction was declined.

Kania and Sanders are best understood as cases in which a plaintiff requested damages in addition to specific enforcement of an agreement reached with federal prosecutors. Because federal prosecutors are not in the business of deciding when a damage remedy is available, the Courts in Kania and Sanders declined to exercise Tucker Act jurisdiction.

Plaintiff Berg, however, is not seeking damages in addition to specific performance. He did not ask to vacate his plea, which is a moot point since he has already served the sentence. Nor did he receive full and specific performance. As alleged in his complaint, the Government was obligated to return the unforged sports memorabilia; this never happened. Thus, unlike

Kania, Berg is not requesting damages and court costs related to enforcement of the agreement and, unlike Sanders, he is not asking for damages in addition to specific enforcement of the deal. Berg never received the benefit of his bargain and, as juxtaposed to the agreements in Kania and Sanders, federal prosecutors are explicitly authorized by statute to determine what property is forfeited and what property is returned. That distinction alone separates Plaintiff Berg's claim from the cases relied upon by the Government.

Taken to its logical extreme, the Government's argument allows federal prosecutors to induce a plea based on a promise that only certain items will be forfeited. Once the plea is entered and while the sentence is being served, government agents may then confiscate and destroy, or give away, any property that belonged to the Plaintiff, no matter how unrelated the property is to the charged offense. Could the Government with impunity seize and forfeit Plaintiff's car or his home or stocks kept in a safety deposit vault? According to the Government, all such seizures and forfeitures are permissible, even though the plea agreement only allowed for forfeiture of forged sports memorabilia. The Government has not, and cannot, cite a case that allows federal prosecutors to freely engage in acts that would subject anyone else to civil damages and criminal penalties.

Furthermore, the Government's interpretation of Kania and Sanders is irreconcilable with Unites States v. Winstar Corporation, 518 U.S. 839, 135 L.Ed.2d 964 (1996). Winstar was decided after Kania and is not mentioned in Sanders. But the "unmistakability" language that is at the core of Kania and Sanders also was the primary issue in Winstar. The relevant issues in Winstar were whether the surrender of "sovereign authority must appear in unmistakable terms" and whether the agent's "authority to make such surrenders must be delegated in express terms." Winstar, 518 U.S. at 860. Since a prosecutor's authority to make forfeiture decisions cannot be disputed, the real issue here is whether the prosecutor must expressly surrender sovereign authority. The answer dictated by Winstar is no.

To begin with, the "unmistakability doctrine" was historically limited to legislative acts that adversely affected existing contracts. Fletcher v. Peck, 6 Crunch 87, 3 L.Ed. 162 (1810), Winstar, 518 U.S. at 873-75. Over time the doctrine was applied in other circumstances but the Winstar Court saw no reason to apply it to most contract claims. Winstar, 518 U.S. at 880-81. The doctrine is not applicable unless the risk allocation in the contract effectively limits sovereign authority. Id. No such risk is implicated by an agreement to forfeit Property A, but not Property B. Neither the Government's

legislative nor its executive powers are impinged by forfeiture agreements, and judicial authority is served by providing remedies to litigants who were mistreated by government agents.

Taken as true, Plaintiff Berg's complaint alleges that government agents took, and apparently gave away, his property, even though those agents promised they would not take that property. What sovereign power is limited by allowing a remedy for an egregious breach of an agreement that the government agents had authority to make? The Government cannot identify one, and there are a myriad of circumstances where the unmistakability doctrine has no valid place. See Winstar, 518 U.S. at 883 f.n. 25. A "requirement to pay money supposes no surrender of sovereign power by a sovereign with the power to contract." Winstar, 518 U.S. at 881.

Here, the federal prosecutors had the authority to decide what, if any, property was subject to forfeiture. They made that decision and then took property that was not covered by the agreement. The real question, therefore, is not whether this Court has jurisdiction, it does, but by what right can the government randomly and without judicial approval take private property. Is everyone who enters a plea subject to forfeiture of all his property without notice or a hearing? That hardly sounds like a plausible reading of the Takings Clause.

As the Court explained in Winstar, "Injecting the

opportunity for unmistakability litigation into every common contract action would...produce the untoward result of compromising the Government's practical capacity to make contracts... " Winstar, 518 U.S. at 884. The Government's Motion to Dismiss is "at odds with [its] own long run interest as a reliable contracting partner... ". Winstar, 518 U.S. at 883. An overwhelming majority of the thousands of federal criminal cases that are resolved every year, involve plea agreement. The vast majority of them are drug or financial cases that include forfeiture issues. If Government attorneys and agents cannot be trusted to keep their end of these bargains, the court system soon will be gridlocked with pending cases. No interest is served by allowing Government agents to seize and dispose of property that is not explicitly covered by the plea agreement.

Nor does it make sense to assume, as the Government apparently does, that agents can, with impunity, take private property whenever a person pleads guilty. The economic principles that led the Court to reject the unmistakability defense in Winstar are applicable here as well. Any other result will undermine "the Government's credibility at the bargaining table and [increase] the costs of its engagements." Winstar, 518 U.S. at 884. It is a far better course to accept that when "the United States enters into contract relations, its rights and duties therein are governed by the law applicable to contracts

between private individuals." Lynch v. United States, 292 U.S. 698, 579 (1947).

**THE GOVERNMENT VIOLATED THE TAKINGS CLAUSE BY SEIZING PLAINTIFF'S PROPERTY AND THEN DISPOSING OF IT WITHOUT COMPENSATING HIM.**

Plaintiff agrees that the "Government may retain property used in the commission of a crime without paying compensation." (Gov't Mot. at 6). Plaintiff's claim, however, does not involve any forfeitable property, a point the Government properly concedes. (Gov't Mot. at 7). Taking the allegations as true, Plaintiff's claim is that the Government confiscated property that had nothing to do with his plea agreement. For purposes of the Motion to Dismiss, the Court must assume that the Government took private property that was not covered by the plea agreement. Since the Government concedes it does not have the right to take private property without just compensation, the alleged facts support a Takings Clause claim.

> The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

Armstrong v. United States, 364 U.S. 40 at 49.

None of the cases cited by the Government raised Takings Clause claims in the same context as Plaintiff's claim. Plaintiff is not mounting a collateral attack on a legitimate forfeiture. He makes no claim to the forged property that was at

issue in the criminal proceedings. But, as previously noted, his plea related exclusively to forged property, and the Government cannot, consistent with the Takings Clause, confiscate property unrelated to the plea agreement. The question presented here is civil, not criminal, and the consequence of a determination favorable to Plaintiff will not adversely affect any prosecutorial interest. Nor will such a decision impinge on the District Court's jurisdiction over the plea. In fact, the District Court quite correctly has noted that it does not have jurisdiction over Plaintiff's claim.

**CONCLUSION**

For all of these reasons, this Honorable Court should deny the Motion to Dismiss.

Respectfully Submitted,

_______________________________

s/THOMAS PETERS
Attorney for Plaintiff
542 S. Dearborn, Suite 750
Chicago, IL 60605
312-697-0022