# In the United States Court of Federal Claims

No. 03-2351C

(Electronically Filed on January 31, 2005)

********************************
*
**STEVE BERG,** *
*
Plaintiff, *
*
v. *
*
**THE UNITED STATES,** *
*
Defendant. *
*
********************************

**Thomas Peters**, Chicago, Illinois, for plaintiff.

**Mark A. Melnick**, Assistant Director, and **Christian J. Moran**, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for defendant, with whom on the brief were **Peter D. Keisler**, Assistant Attorney General, Civil Division, and **David M. Cohen**, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C.; **Ernest Y. Ling**, Assistant United States Attorney, Northern District of Illinois, Chicago, Illinois, and **Michael Duclos**, Assistant General Counsel, Federal Bureau of Investigation, U.S. Department of Justice, Washington, D.C., of counsel.

## Opinion and Order

After serving more than a year in prison, and pleading guilty to federal wire fraud and income tax evasion, plaintiff seeks breach of contract and taking damages exceeding $250,000 for property forfeited in connection with a plea agreement. Plaintiff also claims that the Federal Bureau of Investigation ("FBI") violated his Constitutional rights under the Fifth Amendment. Defendant has moved to dismiss for lack of subject matter jurisdiction.

For the reasons stated below, plaintiff's breach of contract and Fifth Amendment taking claims both are dismissed.

## I. Background

On April 6, 1999, pursuant to a plea agreement in the United States District Court for the Northern District of Illinois, plaintiff, Steve Berg, pled guilty to charges of wire fraud[1] and tax evasion[2] stemming from the sale of falsified items of sport memorabilia. Compl. Ex. 1 ("Plea Agreement") at 2. Mr. Berg admitted selling large quantities of sports memorabilia items with forged authentications, the aggregate value of which was more than $500,000, knowing that the items had not, as purported, been autographed, worn, or used by the athletes. Id. at 3-4.

At the plea hearing, the government informed the court that plaintiff agreed to forfeit numerous items no longer required as evidence, stating:

---

[1] 18 U.S.C. § 1343.

[2] 26 U.S.C. § 7203.

> [T]he FBI no longer needs to retain as evidence each and every item of the forged memorabilia but, instead, is going to photograph and preserve it for evidence in that manner. . . . [W]hat Mr. Berg has agreed is to forfeit the sports memorabilia to the United States to be disposed according to law. Mr. Berg and the FBI would like for those items to be donated to one or more charities that will distribute the items to needy children in the Chicago area.

Compl. Ex. 2 ("Tr.") at 20-21. His counsel informed the district court that plaintiff did not seek to recover compensation for the forged items, but only sought the return of "authentic" items and "some" personal items. Id. at 22.

A court order memorializing the parties' agreements authorized the FBI to donate to a charitable institution the "forged sports memorabilia" items, defined as "numerous items of forged or altered sports memorabilia, consisting primarily of jerseys, basketballs, baseballs, and other miscellaneous athletic equipment, which was seized from defendant Berg pursuant to a federal search warrant." Compl. Ex. 3 ("Agreed Order") at 1-2; see also Tr. at 22-23. Seven months later, the district court sentenced plaintiff to fifteen months of incarceration, three years of probation, and $26,000 in restitution. Compl. at ¶ 21, 23.

Plaintiff now alleges that most of his sports memorabilia inventory was not forged, and that the FBI violated the Agreed Order by donating all of the seized property, rather than only the illegitimate items. Compl. at 11-12, 24-27.

Defendant argues that the court lacks subject matter jurisdiction over this complaint because, although a plea agreements is a contract, the Court of Federal Claims "cannot interfere with the functioning of the criminal justice system." Def.'s Mot. at 1-2. Defendant contends that plaintiff's Fifth Amendment claim raises similar issues, because it turns on plaintiff's ownership of the unforged merchandise, a legal issue dependent on the interpretation of the plea agreement, which is a matter within the province of the criminal justice system and thus lies beyond the jurisdiction of this court. Id. at 3; see also Def.'s Reply at 6.

Plaintiff responds that the plain language of the Tucker Act does not expressly preclude jurisdiction over breaches of criminal plea agreements. Pl.'s Mem. at 3. Plaintiff also argues that his taking claim does not collaterally attack the legitimacy of the forfeiture, but is merely a taking claim with respect to material that is not covered by the Agreed Order. Id. at 12-13.

## II. Discussion

In deciding whether to dismiss a claim for lack of subject matter jurisdiction, the court must construe unchallenged allegations of the complaint favorably to the non-movant, and should not dismiss the complaint unless it is beyond doubt that the plaintiff can prove no set of facts entitling it to relief. **Hamlet v. United States**, 873 F.2d 1414, 1416 (Fed. Cir. 1989).

### A. Breach of Contract

Defendant concedes that plea agreements in criminal cases are enforceable contracts. However, based on substantial case law,

defendant argues that breach damages may not be adjudicated in this court, but only, if at all, in the court hearing the original prosecution, unless the agreement clearly provided for monetary liability in the event of breach.

Plea agreements are contracts, involving a bargained-for exchange of consideration, to wit: the government obtains the certainty of a conviction, in exchange for the criminal defendant's avoiding the risk of a harsher sentence. See, e.g., **United States v. Conway**, 81 F.3d 15, 17 (1st Cir. 1996). Courts often draw on commercial contract law when interpreting plea agreements. See, e.g., **United States v. Conner**, 930 F.2d 1073, 1076 (4th Cir. 1991) (*citing* **United States v. Harvey**, 791 F.2d 294, 300-1 (4th Cir. 1986) (construing ambiguity in plea agreement, as in a commercial contract, against the drafting prosecutor); **United States v. Khan**, 920 F.2d 1100, 1105 (2d Cir. 1990) (when compliance with a plea agreement was conditioned on prosecutor's satisfaction that defendant fully cooperated, the agreement was not breached by prosecutor's honest, albeit unreasonable, dissatisfaction)).

Nevertheless, constitutional concerns inherent in the criminal justice system, such as the right to counsel, the right to avoid self-incrimination, and rights to a jury trial and to confront witnesses, preclude the enforcement and construction of plea agreements as ordinary business agreements. See, e.g., FED. R. CRIM. P. 11(b) (listing prerequisites for court acceptance of plea agreement).

The need to safeguard the foregoing rights, to ensure that any waiver of those rights is voluntary and informed, to maintain public confidence in the fair and effective administration of the criminal justice system, and to protect the criminal court's broad discretion to decide the terms of the sentence requires that plea agreements be treated differently than commercial contracts. See, e.g., **Conway**, 81 F.3d at 16 (*citing* **United States v. Mariano**, 983 F.2d 1150, 1155,

1156-57 (1st Cir. 1993)); see also **Harvey**, 791 F.2d at 300 (in federal criminal prosecutions, a court is concerned with the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government") (*citing* **Mabry v. Johnson**, 467 U.S. 504, 509 (1984), *and quoting* **United States v. Carter**, 454 F.2d 426, 428 (4th Cir. 1972)).

The leading case on this issue concerned an agreement by Rudolph Santobello to plead guilty to a lesser gambling crime in exchange for the prosecutor's agreement to make no sentencing recommendation. See **Santobello v. New York**, 404 U.S. 257, 258 (1971). Nevertheless, at the time of sentencing, several months later, a new prosecutor, apparently ignorant of the agreement, recommended the maximum possible sentence. **Id.** at 259. Over defendant's offer to prove the existence of the agreement, and because there were independent grounds for doing so, the court imposed the maximum sentence. **Id.** at 259-60.

On certiorari, the Supreme Court held that plea agreements were essential to an efficient criminal justice system, but must follow principles of fairness, i.e., the plea must be voluntary and informed and, if induced by a prosecutor's promise, the promise must be fulfilled. **Santobello**, 404 U.S. at 261-62. Because the prosecutor breached the plea agreement and could not prove that the breach was immaterial, the Court remanded the case to the state courts, which were in a better position to decide whether specific performance of the agreement or withdrawal of the guilty plea was the proper form of relief.[3] **Id.** at 262-63.

---

[3/] Santobello had not claimed monetary damages, but sought only the withdrawal of his guilty plea.

Defendant points to two cases in this circuit regarding the application of the Tucker Act to claims for monetary damages arising from breach of plea bargains: **Kania v. United States**, 227 Ct. Cl. 458 (1981), and **Sanders v. United States**, 252 F.3d 1329 (Fed. Cir. 2001).

In **Kania**, an Assistant United States Attorney ("AUSA") allegedly agreed orally not to subject Eugene Kania, a grand jury witness, to prosecution. **Kania**, 227 Ct. Cl. at 460. When Kania was indicted anyway, he moved to quash the indictment as a breach of the government's agreement. **Id.** at 461. A federal district court agreed, and dismissed the indictment. **Id.**

Kania then sued the government in this court under the Tucker Act for legal fees and other consequential damages caused by the breach of his immunity agreement. **Id.** at 462.

The Court of Claims dismissed Kania's claim, holding that money damages based on an alleged breach of a criminal plea bargain were not recoverable in this court, Congress not having consented to suits against the United States in such cases, unless (1) the AUSA had specific authority to enter into an agreement obligating the United States to pay money, and (2) the agreement specified how the court would determine the government's liability. **Id.** at 465-66.

Twenty years later, in **Sanders v. United States**, 252 F.3d 1329 (Fed. Cir. 2001), the issue of enforcing plea bargains resurfaced. Based on an AUSA's written release, defendant James Sanders, who had been convicted of mail fraud, was allowed to remain free on bail pending appeal, under stipulated conditions. **Sanders**, 252 F.3d at 1331-32. Three days after revoking his bail, Sanders again was released. At both bail hearings, the prosecutor objected to Sanders' release, and accused him of practicing law without a license — although avoiding this activity was not a stipulated bail condition. **Id.**

When his conviction was affirmed on appeal, the trial court again revoked bail.

Sanders subsequently sued the United States in Oregon district court for $18 million in damages allegedly caused by the prosecutor's breach of the agreement. **Id.** After transfer, the Court of Federal Claims, in an unpublished decision, dismissed the case for lack of subject matter jurisdiction, concluding that a release order was not a contract with the United States for a sum of money subject to the Tucker Act, but rather "clearly the creation of the criminal justice system." **Id.** at 1333.

Agreeing with **Santobello**, the Federal Circuit concluded that prosecutors were authorized to enter into criminal plea agreements and that these were specifically enforceable. **Id.** at 1334 (*citing* **Santobello**, 404 U.S. at 262). The court distinguished the plurality holding in **United States v. Winstar**, 518 U.S. 839, 885 (1996), that damages are the default remedy for breach of contract, on the grounds that **Winstar** did not involve a plea agreement in a criminal case. **Sanders**, 252 F.3d at 1335.

The Federal Circuit held that the breach of a criminal plea agreement gives rise to a Tucker Act claim only if the agreement "clearly and unmistakably subjects the United States to monetary liability for any breach," and the prosecutor had authority to enter into the agreement. See **Sanders**, 252 F.3d at 1335-36 (*citing* **Kania**, 227 Ct. Cl. at 268).

The **Sanders** court also held that claims based "on breach of plea agreements and other agreements unique to the criminal justice system should be brought in the courts in which they were negotiated and executed," and that it was "particularly unreasonable" to believe that Congress intended to give the Court of Federal Claims jurisdiction over the conduct of criminal trials. **Sanders**, 252 F.3d at

1335-36 (*citing* **Santobello**, 404 U.S. at 263; *also citing* **Kania**, 227 Ct. Cl. at 466).

The Federal Circuit affirmed the dismissal of the complaint because the **Sanders** bail agreement did not contain any language unmistakably providing for monetary liability for breach of the agreement. **Id.** at 1336.

The Federal Circuit's reasoning in Sanders is widely shared. See, e.g., **United States v. Gonzalez-Sanchez**, 825 F.2d 572, 578 (1st Cir. 1987) ("The factual determination whether [a] plea agreement has been breached lies with the trial judge.") (*citing* **United States v. Khoury**, 755 F.2d 1071, 1073 (1st Cir. 1985); **United States v. Verrusio,** 803 F.2d 885, 888-91 (7th Cir. 1986))); see also **United States v. Gerant**, 995 F.2d 505, 509 (4th Cir. 1993).

Plaintiff attempts to distinguish **Kania** and **Sanders**, arguing that, unlike those plaintiffs, plaintiff does not seek specific performance of the plea agreement, having already completed his sentence. Pl.'s Mem. at 7. However, **Kania** and **Sanders** turned, not solely on the criminal nature of the agreements, but principally on standard Tucker Act principles precluding recovery under agreements (1) beyond the authority of the government official to negotiate, and (2) that did not clearly mandate money damages. See **Cal. Fed. Bank v. United States**, 245 F.3d 1342, 1346 (Fed. Cir. 2001) (*citing* **Massie v. United States**, 166 F.3d 1184, 1188 (Fed. Cir. 1999) (an agreement is not under the Tucker Act unless it shows: mutual intent to contract, including an offer and acceptance; consideration; and a government representative with actual authority to bind the government)).

Because the Plea Agreement is silent about subjecting the United States to any monetary liability for its breach, and plaintiff has provided no evidence, and the court is aware of none, that the AUSA had the authority to obligate the United States to pay money damages,

this court may not entertain plaintiff's claim for breach of contract damages.[4]

B. Uncompensated Taking

Defendant argues that this court lacks subject matter jurisdiction over plaintiff's taking claim because it depends on the interpretation of a plea agreement, which this court may not perform, and because breach of contract claims, ipso facto, are not taking claims. Def.'s Mot. at 3; Def.'s Reply at 6. On the merits, defendant argues that

---

[4] Plaintiff relies on the court's non-binding decision in **Bailey v. United States**, 54 Fed. Cl. 459 (2002), to support his contention that federal prosecutors implicitly have the requisite authority because it is an integral part of their duties. Pl.'s Mem. at 6. He cites no statutory or case-law authority for this argument. In **Bailey**, attorney F. Lee Bailey sued the United States for breach of an implied-in-fact contract to assist the government in repatriating overseas assets of Bailey's client, a drug-trafficker who had concluded a plea agreement with the United States. **Bailey**, 54 Fed. Cl. at 460, 483. Bailey, who sought damages from lost appreciation value of certain property that he expected to receive as a fee, argued that prosecutors have implied actual authority to bind the government. See **id.** at 465, 484, 503. After noting that **Sanders v. United States**, 252 F.3d 1329 (Fed. Cir. 2001), did not apply since the drug-trafficker client was not arguing a breach of his plea agreement, the court held that prosecutors may perform forfeiture duties without unlimited contracting power and dismissed the plaintiff's claim for failure to demonstrate that any prosecutor had authority to form an implied-in-fact contract. See **Bailey**, 54 Fed. Cl. at 506.

plaintiff in fact authorized the government to dispose of all of the seized merchandise, not just the fraudulent items. Def.'s Mot. at 9 n.1; Def.'s Reply at 6.

Plaintiff contends that his claim does not involve the plea agreement because the property alleged to have been taken was not covered by the plea agreement. Pl.'s Mem. at 12-13. Plaintiff cites in support of this notion, however, only a broad holding on takings generally, in a dissimilar case, not involving a plea agreement. See **Armstrong v. United States**, 364 U.S. 40, 49 (1960) ("The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.").

Defendant's motion to dismiss plaintiff's taking claim, like its defense to plaintiff's breach of contract claim, is based on the principle that this court cannot second-guess the actions of another federal court acting within its area of expertise. Def.'s Mot. at 9; Def.'s Reply at 6. Thus, this court cannot entertain a taking claim that requires it to "scrutinize the actions of" another tribunal. **Boise Cascade Corp. v. United States**, 296 F.3d 1339, 1344 (Fed. Cir. 2002) (*quoting* **Vereda Ltda. v. United States**, 271 F.3d 1367, 1375 (Fed Cir. 2001) (citation omitted)).

The Federal Circuit, has set out a two-step analysis for taking claims, which appears in the two cases most similar to this. The court must determine: (1) whether a plaintiff possesses a valid interest in the affected property, i.e., "a stick in the bundle of property rights," and (2) whether the government's action caused a taking of that "stick." **Boise Cascade Corp.**, 296 F.3d at 1344 (*quoting* **Karuk Tribe of Cal. v. Ammon**, 209 F.3d 1366, 1374 (Fed. Cir. 2000)).

The plaintiff landowner in **Boise Cascade** alleged that a U.S. Fish and Wildlife Service ("FWS") injunction preventing him from conducting logging operations because several endangered owls were nesting on the land constituted a taking. **Boise Cascade Corp.**, 296 F.3d at 1341-43. The **Boise** court held that, although the Court of Federal Claims could not review the actions of a district court in a taking claim, review of the judgment order was unnecessary because Boise Cascade accepted the validity of the injunction and filed suit only to determine whether the FWS had worked a taking by seeking the injunction. **Id.** at 1344

Unlike in **Boise**, plaintiff's taking claim requires consideration and interpretation of the court-approved agreement. The amount of the non-forged material - and even its existence - among the items confiscated and, thus, the extent of the taking, depend on the amount and existence of the forged material among the confiscated items.

The plea agreement does not address the disposition of any property other than "forged sports memorabilia" items and says nothing about the disposition of any of plaintiff's personal property or merchandise that was not implicated in the fraudulent scheme. See Agreed Order at 1-3. While the AUSA told the court that the FBI possessed "numerous items of forged or altered sports memorabilia" that plaintiff had agreed to forfeit, Tr. at 20-21, and that there were "a couple of exceptions" concerning authentic items and personal items about which they would consult each other, this reasonably may have left the court, and anyone construing this evidence, with the understanding that the Agreed Order only covered "the forged or altered material." See id. at 21-22. In sum, what material was covered by this order is unclear and requires interpretation by the district court, not this court.

If this means that plaintiff may not obtain relief in any court, this is the case because Congress simply has not granted consent for

the United States to be sued in cases like this. See **Kania**, 227 Ct. Cl. at 465-66.

## III. Conclusion

Plaintiff has failed to demonstrate that the prosecutor in the prior criminal case was authorized to obligate the United States to pay money damages under the Tucker Act for any breach of plaintiff's plea agreement or that the plea agreement clearly and unmistakably subjected the United States to monetary liability and spelled out how such liability would be determined. This court also lacks jurisdiction over plaintiff's Fifth Amendment taking claim because the nature, amount, and even existence of the claim depends upon interpretation of the Plea Agreement, Agreed Order, and courtroom proceedings, matters within the exclusive province of the district court in a criminal proceeding.

Therefore, defendant's motion to dismiss for lack of jurisdiction is GRANTED with respect both to plaintiff's breach of contract claim and his taking claim.

The Clerk of the Court shall enter judgment for defendant.

s/ Diane Gilbert Sypolt
DIANE GILBERT SYPOLT
Judge, U.S. Court of Federal Claims